# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELLBIZ, INC., a Delaware Corporation, and SALVATORE PALELLA, an individual,<br><br>     Plaintiffs,<br><br>       v.<br><br>GRAHAM BLANKENBAKER, an individual, MARCO MCCOTTRY, an individual, and AMY SHAT, an individual,<br><br>     Defendants. | **Case No.** _____<br><br>**VERIFIED COMPLAINT**<br><br>CLAIMS FOR DAMAGES:<br><br> (1) Intentional Misrepresentation<br><br> (2) Fraudulent Concealment<br><br> (3) Negligent Misrepresentation<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiffs HELBIZ, INC. ("Helbiz") and SALVATORE PALELLA ("Palella") (collectively,

2    "Plaintiffs"), complain and allege on personal knowledge as to themselves and on information and belief

3    as to all other matters against Defendants GRAHAM BLANKENBAKER ("Blankenbaker"), MARCO

4    MCCOTTRY ("McCottry"), and AMY SHAT ("Shat") (collectively, "Defendants") as follows:

5    **INTRODUCTION**

6    1.    This is an action to recover damages caused by Defendants' scheme to defraud Plaintiffs

7    in connection with Plaintiff Helbiz's acquisition of a "micromobility" company formerly known as

8    Wheels Labs, Inc. ("Wheels") and headquartered in Los Angeles.

9    2.    Founded in Italy in 2019 and headquartered in New York City, Helbiz provides efficient,

10    low-cost transportation solutions with lower environmental impact relative to conventional fossil fuel

11    powered vehicles.

12    3.    In 2022, Helbiz was introduced to Wheels, which was then headquartered in San

13    Francisco, California.  Wheels claimed to be a leader in electric bicycle ("e-bike") manufacturing and

14    technology, with licenses to provide short-term e-bike rentals and operate within major metropolitan

15    areas worldwide, including San Francisco, Los Angeles, and San Diego.  Wheels also claimed to have

16    proprietary technology and a robust support network.  However, Wheels was experiencing funding

17    constraints and was looking for new investors, alternative financing, or to be acquired outright.

18    4.    Defendant Blankenbaker was Wheels' Chief Technology Officer, Defendant McCottry

19    was Wheels' Chief Executive Officer and Defendant Shat was Wheels' Chief Operating Officer.  Based

20    on representations made by the Defendants regarding Wheels' technology, subscribers/users, licensing,

21    and support network, Helbiz, led by its Chief Executive Officer, Plaintiff Palella, entered into

22    negotiations to acquire Wheels and merge the company into Helbiz.  The deal was consummated via an

23    amended and restated agreement and plan of merger (the "Merger Agreement") entered into as of

24    November 18, 2022, which provided Wheels and the Defendants, individually as owners of Wheels,

25    substantial cash consideration of nearly $3 million, as well as equity in Helbiz in the form of stock and

26    stock grants.  *See* Exhibit A (Amended and Restated Merger Agreement and Plan of Acquisition as

27

28

1

*Helbiz, Inc., et al. v. Blankenbaker, et al.*, Case No. _____
Verified Complaint

1    between Helbiz and Wheels).

2        5.    Prior to its acquisition by Helbiz, on or about August 3, 2022, Wheels had entered into a

3    term sheet with Defendants pursuant to which Blankenbaker advanced Wheels $750,000 as a refundable

4    deposit in anticipation of a separate financing transaction not involving Helbiz.  In the event that

5    financing transaction was not completed, Wheels was obligated to return the $750,000 deposit to

6    Defendant Blankenbaker.  The financing transaction was not completed; however, Wheels did not return

7    the $750,000 deposit to Blankenbaker.  Instead, Helbiz assumed the obligation to repay the deposit to

8    Blankenbaker, along with all other Wheels liabilities, when Helbiz acquired Wheels in November 2022.

9    Concurrent with Helbiz's acquisition of Wheels, Plaintiff Palella entered into an assignment as of

10   November 21, 2022 (the "Assignment"), pursuant to which Defendant Blankenbaker agreed to assign

11   any right to repayment of the $750,000 deposit to Plaintiff Palella in exchange for which Plaintiff Palella

12   individually would issue two promissory notes to Defendant Blankenbaker, each in equal amounts of

13   $375,000.  *See* Exhibit B (Assignment  The parties, however, executed only one promissory note, of

14   which Palella paid approximately $300,000 in principal and interest.

15       6.    After taking over Wheels' operations in 2023, Plaintiffs began to discover that

16   Defendants had made numerous false and misleading statements and omissions of material fact upon

17   which Plaintiffs had reasonably relied and which fraudulently induced Helbiz to acquire Wheels and

18   assume its liabilities, including the Assignment executed by Plaintiff Palella.

19       7.    Specifically, Defendants misrepresented and omitted to disclose that: (i) Wheels' user

20   numbers—a key metric by which Helbiz assessed Wheels' value, business and business prospects—

21   were false and had been grossly inflated by hundreds of thousands of fictitious user accounts that were

22   created in a prior hacker attack that Defendants, including Defendant Blankenbaker who was Wheels'

23   Chief Technology Officer, knew about but failed to disclose to Plaintiffs; (ii) the control module

24   technology responsible for managing the motor and telemetry of the Wheels e-bikes was not owned or

25   controlled by Wheels but by a third-party vendor with whom Wheels had ceased communication and

26   refused to compensate for services shortly before the merger; (iii) the GSM module, which facilitated

27

28

1  transmission of critical operational data, such as battery levels, was not reliable but instead frequently

2  lost its connection, resulting in inaccurate battery level readings and negative user experience; the

3  reporting database, which is the primary database used for generating reports and managing operations,

4  was prone to failure and ultimately ceased functioning altogether; (iv) the throttle activation software

5  was buggy and unreliable; and the e-bike operating software was plagued by significant security flaws,

6  which resulted in the theft of hundreds of bikes.

7          8.      As Wheels' Chief Technology Officer, Chief Executive Officer and Chief Operating

8  Officer the Defendants were responsible for identifying and disclosing material information about

9  Wheels' business, including any material problems or concerns, and Palella and Helbiz reasonably relied

10 on Wheel's executive team to make those disclosures in the normal course.

11         9.      After the merger, Plaintiffs discovered that the representations concerning Wheels'

12 business operating without material issues were false, and that Defendants knew and recklessly omitted

13 material issue with the business and its core technology.  In truth, Wheels did not own all technology

14 that was required to operate the company and the technology that Wheels did own was unreliable.  In

15 fact, *the reusability of Wheels software was less than 5%*, meaning that Helbiz had to create new

16 technology to try to make the company and its e-bikes work.  During the pendency of the merger,

17 Defendants also did not continue to conduct the business of Wheels "in the ordinary course," including

18 paying amounts owed to key vendors and support service providers, as required under the merger

19 agreement.  Finally, Defendants misrepresented and omitted to disclose material facts regarding critical

20 vendor and support relationships, and ongoing and threatened litigation or claims, resulting in millions

21 of dollars of undisclosed contingent liability.

22         10.     Upon discovery of Defendants' misrepresentations, Palella ceased all payments on the

23 promissory note issued pursuant to the Assignment.  Defendant Blankenbaker commenced an action

24 against Palella in the U.S. District Court for the Southern District of New York, titled *Blankenbaker v.*

25 *Palella*, Case No. 24-cv-01603-VEC (S.D.N.Y.) seeking enforcement of the sole promissory note.

26         11.     Plaintiffs bring this action seeking recompense for more than $1 million in damages

27

28

3

1    caused by Defendants' misrepresentations and fraudulent conduct.

2                                          **THE PARTIES**

3    **Plaintiffs**

4           12.    Plaintiff Helbiz, Inc., is a corporation organized and existing under the laws of the State

5    of Delaware with its principal place of business at 500 Broome Street, New York, New York, 10013.

6           13.    Plaintiff Palella is a resident and citizen of the State of Connecticut.

7    **Defendants**

8           14.    Defendant Blankenbaker is a resident and citizen of the State of California.  Defendant

9    Blankenbaker formerly served as Chief Technology Officer for Wheels Labs, Inc.

10          15.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Marco

11   McCottry is a resident and citizen of the State of California.  Defendant McCottry formerly served as

12   Chief Executive Officer for Wheels Labs, Inc.

13          16.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Amy Shat is

14   a resident and citizen of the State of California.  Defendant Shat formerly served as Chief People Officer

15   for Wheels Labs, Inc.

16                                    **JURISDICTION AND VENUE**

17          1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is

18   complete diversity of citizenship between all Plaintiffs and all Defendants and the amount in dispute in

19   this action, exclusive of interest and costs, exceeds the sum of $75,000.

20          2.     This Court has personal jurisdiction over Defendants because, at all relevant times herein,

21   Defendants resided in this District, did business in California and in this District, and many of the acts

22   complained of and giving rise to the claims alleged occurred in and emanated from this District.

23          3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part

24   of the acts or omissions giving rise to this lawsuit occurred in this District.

25   ////

26   ////

27

28
                                                        4
                    *Helbiz, Inc., et al. v. Blankenbaker, et al.*, Case No. _____
                                            Verified Complaint

## **FACTUAL ALLEGATIONS**

17.     In 2022, Helbiz was introduced to Wheels, which was then headquartered in San Francisco, California.  Wheels claimed to be a leader in e-bike manufacturing and technology, and provided short-term e-bike rentals within major metropolitan areas worldwide, including in San Francisco, Los Angeles, and San Diego.  Wheels also claimed to have proprietary technology, established and reliable licensing arrangements, and a robust support network.  However, Wheels was experiencing funding constraints and was looking for new investors, alternative financing, or to be acquired outright.

18.     Defendant Blankenbaker was Wheels' Chief Technology Officer, Defendant McCottry was Wheels' Chief Executive Officer and Defendant Shat was Wheels' Chief People Officer.  Based on representations made by the Defendants regarding Wheels' technology, subscribers/users, licensing, and support network, Helbiz, led by its Chief Executive Officer, Plaintiff Palella, soon entered into negotiations to acquire Wheels and merge the company into Helbiz.  The deal was consummated via an amended and restated agreement and plan of merger (the "Merger Agreement") entered into as of November 18, 2022, which provided the Defendants, individually and as owners of Wheels, substantial cash consideration of nearly $3 million, as well as equity in Helbiz in the form of stock and stock grants. As a result of the merger, Wheels became a wholly owned subsidiary of Plaintiff Helbiz.

19.     Prior to its acquisition by Helbiz, on or about August 3, 2022, Wheels had entered into a term sheet with Defendants pursuant to which Blankenbaker advanced Wheels $750,000 as a refundable deposit in anticipation of a separate financing transaction not involving Helbiz.  In the event that the financing transaction was not completed, Wheels was obligated to return the $750,000 deposit to Defendant Blankenbaker.  The financing transaction was not completed; however, Wheels did not return the $750,000 deposit to Blankenbaker.  Instead, Helbiz assumed the obligation to repay the deposit to Blankenbaker, along with all other Wheels liabilities, when Helbiz acquired Wheels in November 2022. Concurrent with Helbiz's acquisition of Wheels, Plaintiff Palella entered into an assignment as of November 21, 2022 (the "Assignment"), pursuant to which Defendant Blankenbaker agreed to assign

*Helbiz, Inc., et al. v.Blankenbaker, et al.*, Case No. _____
Verified Complaint

1    any right to repayment of the $750,000 deposit to Plaintiff Palella in exchange for which Plaintiff Palella

2    would issue two promissory notes to Defendant Blankenbaker, each in equal amounts of $375,000.

3    Between July and December 2023, Plaintiff Palella paid principal and interest on the promissory note

4    totaling approximately $300,000.  The parties did not execute a second promissory note.

5         20.    After taking over Wheels' operations in 2023, Plaintiffs began to discover that

6    Defendants had made numerous false and misleading statements and omissions of material fact upon

7    which Plaintiffs had reasonably relied and which fraudulently induced Helbiz to acquire Wheels and

8    assume its liabilities, including the Assignment executed by Plaintiff Palella.

9         21.    Specifically, Defendants misrepresented and omitted to disclose:

- **Inflated User Numbers**: Defendants provided data regarding the number and identiy
  of users for Wheels's e-bike rental services, including through the Wheels due
  diligence data room.  Wheels' user numbers—a key metric by which Helbiz assessed
  Wheels' value, business and business prospects—were false.  In fact, the numbers
  were grossly inflated by hundreds of thousands of fictitious user accounts that had
  been created in a prior hacker attack that Defendants, including Defendant
  Blankenbaker who was Wheels' Chief Technology Officer, knew about but failed to
  disclose to Plaintiffs.

- **Unreliable Control Module**: The control module technology responsible for
  managing the motor and telemetry of the Wheels e-bikes was not owned or controlled
  by Wheels.  In truth, the control module technology was owned and provided by a
  third-party vendor with whom Wheels had ceased communication and refused to
  compensate for services shortly before the merger.  Wheels did not own or control the
  source code.  Following the merger, the third-party vendor refused to support the
  control module, causing the control module to become unreliable, which in turn
  caused the e-bikes to shut down unexpectedly and fail to restart, negatively impacting
  the usability and reliability of the e-bikes.

- **Unreliable GSM Module**: The GSM module, which facilitated the connection for
  transmitting data such as battery levels, was not reliable but instead frequently lost its
  connection, resulting in inaccurate battery level readings and negative user
  experience.

- **Reporting Database Failure**: Following the acquisition, the primary database used
  for generating reports and managing operations ceased functioning.

- **Throttle Activation Software Problems**: Defendants misrepresented the operability
  and reliability of the throttle activation software, which created potentially dangerous
  rider conditions.

6

*Helbiz, Inc., et al. v.Blankenbaker, et al.*, Case No. _____
Verified Complaint

- **Security Flaws**: Significant security flaws resulted in the theft of hundreds of bikes, which were not disclosed to Plaintiffs prior to execution of the Merger Agreement and Assignment. Specifically, the Wheels e-bikes suffered a manufacturing and/or design defect consisting of (or resulting in) unreliable electronic connectors at the base of the frame and battery and improper installation of the battery lock. These conditions combined allowed the battery to move excessively within the e-bike frame tube, which in turn, caused the software to unlock the e-bike without authorization.

- **Liabilities**: Defendants failed to disclose unpaid vendor invoices and pending and threatened lawsuits, including involving personal injury claims, employment claims, and commercial claims. Specifically, Plaintiffs discovered that Wheels was in default on payments owed to a company called Fivetran, which was critical to Wheels's operations. In response, Fivetran terminated its services for Wheels and crippled Wheels's ability to replicate its data and conduct operations of its rental e-bikes. Likewise, after the merger, Plaintiffs discovered scores of threatened and pending lawsuits against Wheels that Defendants failed to disclose or, if disclosed, misrepresented the potential liability.

22.    The above misstatements and omissions were made in connection with direct communications between Plaintiffs and Defendants prior to executing the Merger Agreement and Assignment, as well as through Defendants provision of a "data room" of due diligence documents made available to Plaintiffs and their due diligence team.

23.    Upon information and belief, based on Wheels' officers' C-level positions, Defendant Blankenbaker as CTO was responsible for identifying material issues with Wheels technology that needed to be disclosed, Defendant Shaft as CPO was responsible for identifying material issues with Wheels other systems, including liability and litigation; and Defendant McCottry as the company's CEO was responsible for overseeing the other officers and identifying other material issues with the business. Each failed individually, and upon information and belief, in coordination with one another to include information on the seven material areas identified above.

24.    After the merger closed, Plaintiffs began to discover that Defendants' representations were false, their omissions significant and material, and that Defendants knew and recklessly disregarded their disclosure obligations. In truth, Wheels did not own certain technology or the technology that Wheels did own was unreliable. In fact, *the reusability of Wheels software was less than 5%*, meaning that Helbiz had to create new technology to try to make the company and its e-bikes work. Moreover,

7

*Helbiz, Inc., et al. v.Blankenbaker, et al.*, Case No. _____
Verified Complaint

1    Defendants did not continue to conduct the business of Wheels in the ordinary course during the

2    pendency of the merger, including paying amounts owed to key vendors and support service providers

3    as required under the merger agreement.  Finally, Defendants misrepresented and omitted to disclose

4    material facts regarding critical vendor and support relationships, resulting in millions of dollars of

5    undisclosed contingent liability.

6         25.    By completing the transaction, the Wheels executive stood to personally profit. This is

7    most clear in the case of Defendant Blankenbaker who leveraged his personal loans to Wheels, to obtain

8    promises from Helbiz's CEO to repay that prior loan to Wheels as part of the merger transaction. Thus,

9    Blankenbaker stood to personally lose the full amount of his $750,000 loan to Wheel had Helbiz not

10    been convinced based on fraudulent information to complete the merger and assume that debt.

11         26.    Similarly, Helbiz's other officer stood to receive substantial cash payments through the

12    merger if completed.

13         27.    Defendants' misconduct has caused over $1 million in damages to date.

14    **FIRST CAUSE OF ACTION**

15    Intentional Misrepresentation – Against All Defendants

16         28.    Plaintiffs reallege and incorporate by reference as though fully set forth herein each of

17    the preceding allegations.

18         29.    Defendants individually and collectively as officers of Wheels made the following

19    material misrepresentations to Plaintiffs:

20         **a.**    **User Data:**

21            i.    Representations: In October and November 2022, Defendants individually

22    and collectively on behalf of Wheels and provided or made available to Plaintiffs information concerning

23    the number and identity of users for Wheels' e-bike rental services in direct oral communications and

24    through Defendants' provision of a due diligence data room.  Defendants represented that the user data,

25    which included the total number of active users, was accurate and complete and was comprised of

26    legitimate paying customers of Wheels.  The number of users was a key metric for Plaintiffs in entering

27    into the merger agreement and Assignment.

28

8

ii.    Falsity: These representations were false when made.  Subsequent to the merger, and through a forensic examination of Wheels internal information management systems, Plaintiffs discovered that prior to the merger, Wheels had been the target of an attack from external hackers who created thousands of fictitious user accounts, which were included in the user data provided by Defendants to Plaintiffs during the due diligence period prior to execution of the merger agreement and assignment.

iii.    Scienter: Defendants, as officers of Wheels, were aware of the hacker attack and creation of fictitious user accounts.  Indeed, Defendants represented to Plaintiffs in connection with the merger that Wheels "maintain[ed] a system of disclosure controls and procedures . . . designed to ensure that material information relating to [Wheels] is made known to [Wheels'] principal executive officer [McCottry] and principal financial officer by others within those entities; and at Closing, such disclosure controls and procedures will be effective in all material respects to perform the functions for which they were established."  *See* Exhibit A at § 4.12(c).  In particular, Defendant Blankenbaker knew of the unauthorized intrusion and false user accounts because, as Chief Technology Officer for Wheels, he was informed of the security breach.

**b.    Control Module Technology:**

i.    Representations: In October and November 2022. Defendants individually and collectively on behalf of Wheels represented to Plaintiffs that Wheels owned the control module technology responsible for managing the motor and telemetry of the Wheels e-bikes through direct oral communications and through Defendants' provision of a due diligence data room.  Specifically, in Article IV of the merger agreement, titled "Representations and Warranties" of Wheels, Defendants represented on behalf of Wheels that Wheels had "good and valid title in and to" all assets, including all intellectual property rights necessary for Plaintiffs "to operate the Business immediately after" the merger closed.  *See* Exhibit A at § 4.14(c).

ii.    Falsity: These representations were false when made.  Subsequent to the merger, Plaintiffs discovered that the control module technology was owned and provided by a third-

*Helbiz, Inc., et al. v. Blankenbaker, et al.*, Case No. _____
Verified Complaint

1  party vendor with whom Wheels had ceased communication and refused to compensate for services

2  shortly before the merger. Wheels did not own or control the source code. Following the merger, the

3  third-party vendor refused to support the control module, causing the control module to become

4  unreliable, which in turn caused the e-bikes to shut down unexpectedly and fail to restart, negatively

5  impacting the usability and reliability of the e-bikes.

6            iii.    Scienter: Defendants, as officers of Wheels, were aware that Wheels did

7  not own the control module technology or control the source code. Following the merger, Plaintiffs

8  discovered through direct communications with the owner of the control module technology that

9  Defendants had ceased making payments before the merger. Consequently, the third party refused to

10  provide support to Plaintiffs.

11        **c.    GSM Module Technology:**

12            i.    Representations: In October and November 2022, Defendants individually

13  and collectively on behalf of Wheels represented to Plaintiffs that the GSM module, which facilitated

14  the connection for transmitting data such as battery levels, was reliable in direct oral communications

15  and through Defendants' provision of a due diligence data room.

16            ii.    Falsity: These representations were false when made. Subsequent to the

17  merger, Plaintiffs discovered that the GSM module technology was not reliable but instead frequently

18  lost its connection, resulting in inaccurate battery level readings and negative user experience.

19            iii.    Scienter: Defendants, as officers of Wheels, were aware that the GSM

20  module technology was unreliable. Following the merger, Plaintiffs discovered through a forensic

21  analysis of Wheels' user logs that numerous users had made complaints regarding the GSM module.

22        **d.    Reporting Database:**

23            i.    Representations: In October and November 2022, Defendants individually

24  and collectively on behalf of Wheels represented to Plaintiffs that the primary reporting database was

25  stable and reliable in direct oral communications and through Defendants' provision of a due diligence

26  data room.

27

28

1    ii.    Falsity: These representations were false when made.  Subsequent to the
2    merger, Plaintiffs discovered that the primary reporting database was not reliable and ultimately ceased
3    operating.

4    iii.    Scienter: Defendants, as officers of Wheels, were aware that the primary
5    reporting database was unreliable.  Following the merger, Plaintiffs discovered through a forensic
6    analysis of Wheels' internal slack logs that the primary reporting database had frequently failed.

7    **e.    Throttle Activation Software:**

8    i.    Representations: In October and November 2022, Defendants individually
9    and collectively on behalf of Wheels represented to Plaintiffs that the throttle activation software was
10    fully functional and reliable in direct oral communications and through Defendants' provision of a due
11    diligence data room.

12    ii.    Falsity: These representations were false when made.  Subsequent to the
13    merger, Plaintiffs discovered that the throttle activation software was not reliable.

14    iii.    Scienter: Defendants, as officers of Wheels, were aware that the throttle
15    activation software was unreliable.  Following the merger, Plaintiffs discovered through a forensic
16    analysis of Wheels' user logs that numerous users had made complaints regarding the throttle activation
17    software.

18    **f.    Security Flaws:**

19    i.    Representations: In October and November 2022, Defendants individually
20    and collectively on behalf of Wheels represented to Plaintiffs, in direct oral communications and through
21    Defendants' provision of a due diligence data room, that Wheels e-bikes were protected by security
22    enhancements that automatically locked and immobilized the e-bikes, thereby preventing unauthorized
23    access or use, when the e-bikes were idle and not currently rented.

24    ii.    Falsity: These representations were false when made.  Following the
25    merger, Plaintiffs discovered that the Wheels operating system suffered a hidden, undisclosed defect that
26    enabled unauthorized access and use of the e-bikes by disabling the locking mechanism. This defect was

27

28
*Helbiz, Inc., et al. v.Blankenbaker, et al.*, Case No. _____
Verified Complaint

1   not disclosed during due diligence.

2           iii.    Scienter: Defendants, as officers of Wheels, were aware that the security

3   enhancements in the Wheels operating system was defective.  Following the merger, Plaintiffs

4   discovered that hundreds of Wheels e-bikes were being stolen as a result of this security defect.

5   Moreover, Plaintiffs discovered through a forensic examination of company records that Defendants

6   were aware that hundreds of e-bikes had been stolen prior to the merger due to this security defect.

7       **g.    Unresolved Liabilities:**

8           i.    Representations: In October and November 2022, Defendants individually

9   and collectively on behalf of Wheels provided a disclosure in connection with Plaintiffs' pre-merger due

10  diligence that purported to identify all outstanding material amounts owed to third parties by Wheels and

11  all pending or threated litigation and claims.  In fact, in Article IV of the merger agreement, titled

12  "Representations and Warranties" of Wheels, Defendants represented on behalf of Wheels that the

13  financial statements provided to Plaintiffs in connection with the merger agreement and Assignment

14  were "true, complete and correct" and there were no "material liabilities, debts or obligations of any

15  nature of the type required to be reflected on a balance sheet in accordance with [Generally Accepted

16  Accounting Principles]," except for certain carve-outs not relevant here, at the time of the merger.  *See*

17  Exhibit A at § 4.11(c)-(d).  Defendants further represented that Wheels' books and records "accurately

18  and fairly, in reasonable detail, reflect the transactions and dispositions of assets of and the providing of

19  services by" Wheels and that "[a]ll accounts, books, records and ledgers of Target and each Target

20  Subsidiary are accurate, complete, and authentic in that they have been properly and accurately kept and

21  completed in all material respects, and to [Defendants'] knowledge there are no material inaccuracies or

22  discrepancies of any kind contained or reflected therein."  *See* Exhibit A at § 4.12(a)-(b).  Defendants

23  further represented that "there is no [litigation] pending against, or to the best knowledge of [Defendants]

24  threatened against or affecting" Wheels  any of its officers or directors; that there were no material

25  undisclosed "outstanding judgments, awards, decree, injunction" against Wheels; and that Wheels was

26  not "a party to a settlement or similar agreement regarding any [litigation or threatened claim] that

27

28

1   contains any ongoing material obligations, restrictions or liabilities (of any nature)." *See* Exhibit A at §

2   4.15.

3                ii.     Falsity:  These statements were false when made.  In truth, following the

4   merger, Plaintiffs discovered scores of pending litigation and threatened claims regarding personal injury

5   matters, municipal compliance, and commercial disputes for unpaid invoices, as well as undisclosed

6   settlement agreements, totaling more than $3 million in potential liabilities.

7                iii.     Scienter:  Defendants, as officers of Wheels, were aware of the unresolved

8   liabilities.  Indeed, Defendants represented to Plaintiffs in connection with the merger that Wheels

9   "maintain[ed] a system of disclosure controls and procedures . . . designed to ensure that material

10   information relating to [Wheels] is made known to [Wheels'] principal executive officer [McCottry] and

11   principal financial officer by others within those entities; and at Closing, such disclosure controls and

12   procedures will be effective in all material respects to perform the functions for which they were

13   established." *See* Exhibit A at § 4.12(c).

14       30.    The representations identified above were false and made with the intent to induce, and

15   in fact did induce, Plaintiffs to enter into the Merger Agreement and Plaintiff Palella to enter into the

16   Assignment.  Defendants' scienter can also be inferred from the fact that as officers of Wheels, they

17   were responsible for the Company's management, day to day operations and the accuracy of its

18   representations made to Plaintiffs in connection with the merger agreement and Assignment.

19       31.    At the time that Defendants made these misrepresentations, Defendants knew they were

20   false and Defendants concealed and omitted to disclose this information with the intent that Plaintiffs

21   rely on the misrepresentations.

22       32.    At the time of the Defendants' misrepresentations, concealments and omissions, Plaintiffs

23   were ignorant of the true facts.

24       33.    Plaintiffs could not, in the exercise of reasonable care, have discovered Defendants'

25   fraudulent acts due to Defendants' concealment.  In fact, Defendants did not realize the fraud or discover

26   the full extent of Defendants' misrepresentations until after Helbiz acquired Wheels and began

27

28

1    integrating its operations into Helbiz.

2        34.    Plaintiffs reasonably relied upon Defendants' misrepresentations.  Had Plaintiffs known

3    of Defendants' fraudulent intent, Plaintiffs would not have executed the Merger Agreement or the

4    Assignment or expended money and resources to perform its obligations under those agreements.

5        35.    Plaintiffs were harmed in an amount to be proven at trial, including but limited to being

6    unlawfully deprived of the fruits of their money, labor, and resources.  As a direct and proximate

7    consequence of Defendants' fraudulent concealment, Plaintiffs have suffered damages, including out of

8    pocket losses of more than $1 million.  Plaintiffs have also suffered significant "lost opportunity" costs,

9    which will be demonstrated and quantified at a later stage in these proceedings.

10        36.    Defendants' conduct was a substantial factor in causing Plaintiffs' injuries because the

11    expenditures in connection with the Merger Agreement, the Assignment, and the continued operations

12    of Wheels after its acquisition by Plaintiff Helbiz would not have occurred but for the unlawful

13    inducement described above.

14        37.    Defendants, individually and collectively, acted with fraudulent intent and in a spirit of

15    oppression and malice within the meaning of California Civil Code section 3294.

16                              **SECOND CAUSE OF ACTION**
17                          Fraudulent Concealment – Against All Defendants

18        38.    Plaintiffs reallege and incorporate by reference as though fully set forth herein each of

19    the preceding allegations.

20        39.    Defendants fraudulently concealed and omitted to disclose material facts to Plaintiffs in

21    connection with the merger agreement and Assignment, doing so with scienter and to induce Plaintiffs

22    to enter into the merger agreement and Assignment.  Plaintiffs justifiably relied upon Defendants'

23    misrepresentations and omissions in entering into the merger agreement and Assignment.  Had the truth

24    of these mispresented matters been known to Plaintiffs, Plaintiffs would not have entered into the merger

25    agreement and Assignment.  As a direct and proximate result of Defendants' misrepresentations and

26    omissions, Plaintiffs have suffered damages.

27        40.    Defendants fraudulently concealed from Plaintiffs material facts whose disclosure was

28

14

*Helbiz, Inc., et al. v.Blankenbaker, et al.*, Case No. _____
Verified Complaint

1    necessary under the circumstances, and whose suppression meant that the merger agreement and

2    Assignment were each fraudulent and deceptive.

3          41.    Specifically, Defendants fraudulently concealed and omitted to disclose the following

4    facts known to Defendants (but unknown to Plaintiffs) at the time of the merger agreement and

5    Assignment:

- **Inflated User Numbers**: Wheels' user numbers—a key metric by which Helbiz assessed Wheels' value, business and business prospects—were false. In fact, the numbers were grossly inflated by hundreds of thousands of fictitious user accounts that had been created in a prior hacker attack that Defendants, including Defendant Blankenbaker who was Wheels' Chief Technology Officer, knew about but failed to disclose to Plaintiffs.

- **Unreliable Control Module**: The control module technology responsible for managing the motor and telemetry of the Wheels e-bikes was not owned or controlled by Wheels. In truth, the control module technology was owned and provided by a third-party vendor with whom Wheels had ceased communication and refused to compensate for services shortly before the merger. Wheels did not own or control the source code.

- **Unreliable GSM Module**: The GSM module, which facilitated the connection for transmitting data such as battery levels, was not reliable but instead frequently lost its connection, resulting in inaccurate battery level readings and negative user experience.

- **Reporting Database Failure**: The primary database used for generating reports and managing operations was unreliable.

- **Throttle Activation Software Problems**: The throttle activation software was unreliable.

- **Security Flaws**: Significant security flaws resulted in the theft of hundreds of bikes.

- **Liabilities**: Defendants concealed and failed to disclose unpaid vendor invoices and pending and threatened lawsuits, including involving personal injury claims, employment claims, and commercial claims, totaling more than $3 million in potential liabilities.

          42.    Defendants concealed and omitted to disclose these material facts to deceive Plaintiffs

about the nature, condition, value, and other important aspects of Wheels in connection with Plaintiffs'

valuation of Wheels and decisions to enter into the merger agreement and Assignment.

15

43.     In justified reliance on the false understandings created by these material concealments, Plaintiffs entered into the merger agreement and Assignment.  Plaintiffs reasonably relied upon Defendants' misrepresentations. Had Plaintiffs known of Defendants' fraudulent intent, Plaintiffs would not have executed the Merger Agreement or the Assignment or expended money and resources to perform its obligations under those agreements.

44.     Plaintiffs were harmed in an amount to be proven at trial, including but limited to being unlawfully deprived of the fruits of their money, labor, and resources.  As a direct and proximate consequence of Defendants' fraudulent concealment, Plaintiffs have suffered damages, including out of pocket losses of more than $__ million.  Plaintiffs have also suffered significant "lost opportunity" costs, which will be demonstrated and quantified at a later stage in these proceedings.

45.     Defendants, individually and collectively, acted with fraudulent intent and in a spirit of oppression and malice within the meaning of California Civil Code section 3294.

**THIRD CAUSE OF ACTION**
Negligent Misrepresentation – Against All Defendants

46.     Plaintiffs reallege and incorporate by reference as though fully set forth herein each of the preceding allegations.

47.     As alleged above, Defendants made specific false and misleading statements and omissions of material fact concerning the business, financial condition, technology, and operations of Wheels.

48.     When making these misrepresentations and omissions, Defendants lacked any reasonable basis for making them or believing that any of them was true.

49.     Defendants intended that these misrepresentations and omissions would induce Plaintiffs to enter into the Merger Agreement and Assignment.

50.     Plaintiffs did in fact reasonably and justifiably rely on Defendants' misrepresentations and omissions in entering into the Merger Agreement and Assignment.

51.     In proximate consequence of Plaintiffs' reliance on such misrepresentations and

*Helbiz, Inc., et al. v.Blankenbaker, et al.*, Case No. _____
Verified Complaint

1  omissions and entering into the Merger Agreement and Assignment, Plaintiffs have suffered losses

2  exceeding $1 million, as well as opportunity costs and other damages that will be the subject of proof at

3  trial.

4      52.    Plaintiffs allegations are sufficient to state a claim for negligent misrepresentation as

5  against each of the Defendants, who acted individually and in concert with each other.  Defendants are

6  jointly and severally liable for each other's misconduct.

7  **PRAYER FOR RELIEF**

8      WHEREFORE, Plaintiffs pray for relief as follows:

9  A.    The entry of judgment in favor of Plaintiffs;

10  B.    Awarding Plaintiffs damages in an amount to be proven at trial in an amount of not less

11  than $1 million as against each Defendant jointly and severally;

12  C.    Awarding pre- and post-judgment interest;

13  D.    Awarding reasonable attorneys' fees, expenses, and costs of suit; and

14  E.    Awarding such other injunctive and equitable relief as the Court may deem just and

15  proper.

16

17  Date: October 30, 2024            **OMNUM LAW APC**

18  By: */s/Benjamin Galdston*

19      Benjamin Galdston, Esq.

20  4350 Executive Drive, Suite 350
   San Diego, CA 92121

21  Tel: 858.539.9767
   Email: bgaldston@omnumlaw.com

22

23  *Attorneys for Plaintiffs Helbiz, Inc. and Salvatore Palella*

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

*Helbiz, Inc., et al. v.Blankenbaker, et al.*, Case No. _____
Verified Complaint

1

<u>**VERIFICATION**</u>

2
    I, Salvatore Palella, declare as follows:

3
    1.    I am Chief Executive Officer of Helbiz, Inc., a named Plaintiff in this action. I am also a

4
named Plaintiff in my individual capacity in this action. I have personal knowledge of the facts set forth

5
herein.

6
    2.    I have reviewed the foregoing Complaint. The allegations of the Complaint are true and

7
correct to the best of my knowledge, information, and belief.

8
    3.    I declare that the foregoing is true and correct under penalty of perjury under the laws of

9
the United States of America.

10
    Executed on this 30th day of October, 2024.

11
Salvatore Palella

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Helbiz, Inc., et al. v. Blankenbaker, et al.*, Case No. _____
Verified Complaint